F. Michael SCHULTZ, Relator,

v.

The FIFTH JUDICIAL DISTRICT COURT OF APPEALS AT DALLAS and the Honorable Martin Richter, Judge, County Court at Law Number Two, Dallas County, Texas, Respondents.

No. D–0547.

Supreme Court of Texas.

June 12, 1991.

Mr. David W. Evans, Anthony J. Interrante, Evans & Interrante, Dallas, W. Alan Wright, Haynes & Boone, Dallas, Christopher A. Griesel, Haynes & Boone, Austin, Bert Vee Massey, Massey, Shaw and West, Brownwood, for relator.

Clyde A. Wilson, Jr., Gossett, Harrison, Reese & Wilson, San Angelo, Michael L. Jones and Randall K. Lindley, Caolo, Meier & Jones, Dallas, for respondents.

OPINION

GAMMAGE, Justice.

The issue in this original mandamus proceeding is whether a court of appeals abuses its discretion when it declines to entertain a contempt motion based on a turnover order that is the subject of the appeal then pending in the court of appeals. We hold that a post-judgment turnover order is an appealable final judgment and, consequently, subject to the rule that jurisdiction to hear contempt motions for violation of the order being appealed lies in the appellate court where the appeal is pending. We therefore conditionally grant the writ of mandamus because the court of appeals has declined to exercise its exclusive jurisdiction and misled the trial court into assuming jurisdiction when it has none.

The underlying dispute began as a collection suit in Dallas County Court at Law Number Two. Sunbelt National Bank sued Michael Schultz and another person on their respective guaranties of a note. Schultz failed to answer and the trial court rendered an interlocutory default judgment for $43,725.08 against him. Bank regulators declared Sunbelt National Bank insolvent and placed it in receivership. The federal regulatory authorities sold the note and rights in the pending suit to The Cadle Company, an Ohio corporation, which was substituted as plaintiff. The other defendant was nonsuited in 1989 and the default judgment against Schultz became final. There was no appeal of this underlying default judgment.

Schultz is a physician. He receives regular income from a professional association

(Central Texas Women's Clinic). The Cadle Company instituted a number of collection proceedings against Schultz, including seeking a "turnover order"[1] in May 1990 to reach his income from the clinic. On October 5, 1990, the trial judge signed a turnover order appointing a receiver and directing that as he received them Schultz should turn over his paychecks from the Central Texas Women's Clinic to the receiver. The order further directs the receiver to disburse fifty percent of the proceeds of each check to The Cadle Company, deduct the receiver's fees and expenses from the other half and then remit the remainder to Schultz. Schultz duly perfected an appeal of the turnover order to the Fifth Court of Appeals.[2]

█ Schultz filed a supersedeas bond to the turnover order.[3] The first date specified in the order for Schultz to turn over his clinic paycheck to the receiver was three days after filing the supersedeas bond. When Schultz failed to give the check to the receiver, The Cadle Company filed a motion for leave to file a contempt motion in the court of appeals. The court of appeals denied leave to file with an order reciting:

> The trial court retains jurisdiction to enforce by contempt its judgments and orders in aid of execution, notwithstanding the perfection of an appeal. *See Sullivan v. Sullivan*, 719 S.W.2d 239 (Tex.App.—Dallas 1986, no writ). Therefore, the October 23, 1990 motion of relator The Cadle Company for leave to file motion for contempt is DENIED.

The order's practical effect was that the court of appeals directed the trial court to entertain jurisdiction of the contempt motion the appellate court had refused to hear. The Cadle Company then filed its motion for contempt in the trial court. Schultz filed his objection to the jurisdiction of the trial court, which that court overruled by pronouncement and notation on a docket entry, which was subsequently reduced to writing on December 10, 1990. Schultz sought mandamus relief in the court of appeals to the trial court's assumption of jurisdiction over the contempt motion, but the appellate court denied leave to file the petition for writ of mandamus. Schultz then sought mandamus relief in this court. In the meantime, the trial court heard the contempt motion, and, by order also dated December 10, 1990, found Schultz in contempt for violating the turnover order and directed that he be committed to jail.[4] On December 11, 1990, we granted Schultz leave to file his petition for

---

1. *See* Tex.Civ.Prac. & Rem.Code Ann. § 31.002 (Vernon 1986 & Supp.1990).

2. The trial court's turnover order and subsequent appeal were prior to the effective date of the turnover statute's latest legislative amendment, which would apparently prohibit use of a turnover proceeding to reach a paycheck for personal service wages. *See* Act of May 21, 1991, H.B. 480, § 1, 72d Leg., R.S. (to be codified at Tex.Civ.Prac. & Rem.Code Ann. § 31.0025).

3. The apparent purpose of the turnover statute is to aid the collection of final money judgments. An order under the statute, on the other hand, may include injunctive provisions as well as one or more declarations that certain assets are subject to payment of the underlying money judgment, and in addition may include provisions for costs and attorneys' fees for the turnover proceedings. Whether such an order is properly classified as a money judgment or an injunction, it *can* be superseded. Tex.R.App.P. 47(a), (b), (f). The ultimate power over the supersedeas bond, both as to propriety and amount, rests with the appellate court. Tex.R.

App.P. 49. The Cadle Company argues that the amount of Schultz' bond was insufficient. It further argues the bond was ineffective because the turnover order either is not a "judgment" or is an injunction for which under appellate rule 47(f) the appellant had to apply to the trial court in advance for an order setting the amount of the bond. Whether the amount of the supersedeas bond was sufficient, and whether the bond was legally effective to stay the turnover order are in dispute. For the reasons given below, we need not reach these issues.

4. Schultz was never actually restrained because of the contempt judgment; the writ of habeas corpus was therefore not an available remedy for questioning the trial court's jurisdiction. *See generally Deramus v. Thornton*, 160 Tex. 494, 333 S.W.2d 824 (1960). Mandamus is an available remedy in this case because if the court of appeals had contempt jurisdiction, its jurisdiction was exclusive, *Ex parte Boniface*, 650 S.W.2d 776, 777–78 (Tex.1983), and there is no adequate remedy at law by which to correct its failure to exercise that jurisdiction.

writ of mandamus and issued a stay order preventing further action on the turnover order by the lower courts.[5]

■ At the outset we are confronted with the issue of whether the turnover order was a final, appealable "judgment."[6] It is true that the usual writs and orders to aid in execution to collect a final money judgment are not, in general, appealable orders. *Pierson v. Hammond*, 22 Tex. 585 (1858). But the turnover statute authorizes more than just a writ of execution or an order incident to such a writ. The statute requires a factual showing that the judgment debtor has non-exempt property that is *not* readily subject to ordinary execution. It may be against one or more parties other than the judgment debtor. Upon proof of the necessary facts, it authorizes the trial court to order affirmative action by the judgment debtor and others to assist the judgment creditor in subjecting such non-exempt property to satisfaction of the underlying judgment. Such an order acts as a mandatory injunction against the judgment debtor and, if there are such parties, against the receiver and any third parties interested in the property rights being adjudicated. If a turnover order that acts as a mandatory injunction is not appealable, third parties potentially aggrieved by the order have no right of appellate review to protect their affected property interests.

It is well established that a post-judgment order against the judgment debtor for asset discovery under the bill of discovery rule[7] is an appealable final judg-

ment. *Texas Wheat Growers' Ass'n v. Gough*, 70 S.W.2d 818 (Tex.Civ.App.—Amarillo 1934, writ ref'd); *Chapman v. Leaverton*, 263 S.W. 1083 (Tex.Civ.App.—Fort Worth 1924, writ ref'd). Similarly, orders directing discovery against third parties against whom suits are not contemplated that are ends in themselves, resolving all discovery issues between the bill of discovery plaintiff and the discovery defendant, are final and appealable because they act as mandatory injunctions against the discovery defendant. *Dallas Joint Stock Land Bank v. State*, 135 Tex. 25, 137 S.W.2d 993 (1940); *Dallas Joint Stock Land Bank v. Rawlins*, 129 S.W.2d 485 (Tex.Civ.App.—Dallas 1939, orig. proceeding); *see also Whatley v. King*, 151 Tex. 220, 249 S.W.2d 57 (1952). The turnover order at issue in this case resolved the property rights issues and acted as a mandatory injunction as to the judgment debtor Schultz and the receiver. We therefore hold that the turnover order was in the nature of a mandatory injunction[8] and was appealable.

For appealable orders in the nature of an injunction,[9] in which the validity of the order alleged to have been violated is itself in issue in the appeal, the appellate court alone is vested with jurisdiction to enforce the injunctive provisions by contempt. *Ex parte Boniface*, 650 S.W.2d 776, 777–78 (Tex.1983); *Ex parte Werblud*, 536 S.W.2d 542, 544 (Tex.1976); *Ex parte Duncan*, 127 Tex. 507, 95 S.W.2d 675 (1936); *Ex parte Travis*, 123 Tex. 480, 73 S.W.2d 487, 489 (1934). A court of appeals may exercise

---

5. The stay order we originally issued was actually broader, enjoining any further proceedings related to the underlying suit. On The Cadle Company's motion, we modified the stay order to limit it to the turnover proceedings.

6. If the order was not appealable, then jurisdiction never attached in the appellate court and the trial court never lost jurisdiction to enforce its interlocutory order.

7. Tex.R.Civ.P. 737.

8. For purposes of this proceeding we need not decide whether the turnover order was a temporary or permanent injunction, nor whether it was the "final" judgment in the turnover proceedings. We note that after this court assumed mandamus jurisdiction, the trial judge signed an

amended turnover order also awarding attorney's fees for the turnover proceedings and certain additional costs to The Cadle Company. We do not reach any issue as to the effectiveness of the amended order.

9. Some courts have held that in certain support and other "injunctive" type orders under the Family Code, the legislature has provided that contempt jurisdiction remains in the trial court. *See, e.g., Bivens v. Bivens*, 709 S.W.2d 374, 375 (Tex.App.—Amarillo 1986, no writ); *Martin v. O'Donnell*, 690 S.W.2d 75, 77 (Tex.App.—Dallas 1985, orig. proceeding). Such special Family Code provisions have no application in this case.

that jurisdiction by referring to the trial court the fact finding burden of hearing testimony and taking evidence, but the appellate court where the appeal is pending must exercise jurisdiction to actually issue the contempt judgment. *Werblud,* 536 S.W.2d at 544–45. The fact that a supersedeas bond has or has not been filed does not affect the vesting of exclusive jurisdiction in the appellate court. *Boniface,* 650 S.W.2d at 778; *Ex parte Kimbrough,* 135 Tex. 624, 146 S.W.2d 371, 372 (1941). The court of appeals abused its discretion by refusing to take jurisdiction of the contempt issue and misleading the trial court into taking jurisdiction when it had none.

We conditionally issue the writ of mandamus directing the court of appeals to withdraw its order declining to take jurisdiction of the contempt issue. By the conditional writ of mandamus we further direct that the court of appeals order the trial court to rescind all orders it issued in assuming jurisdiction of the contempt issues while the turnover order itself was on appeal. The writ of mandamus will issue only if the appellate court refuses to comply with this opinion.